IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| TRAVERS EARL CRUMPTON | § | |
| VS. | § | CIVIL ACTION NO. 1:11cv123 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION

Petitioner Travers Earl Crumpton, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Factual Background

In 2009, following a jury trial, petitioner was convicted of evading arrest or detention with a vehicle in the 253rd District Court of Liberty County, Texas. After petitioner entered a plea of true to the allegation that he had eight prior felony convictions, the jury sentenced petitioner to 15 years imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Ninth District. *Crumpton v. State*, No. 09-08-00426-CR. Petitioner did not file a petition for discretionary review.

On September 23, 2010, petitioner filed a state application for writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing on November 2, 2011.

## Grounds for Review

Petitioner asserts he received ineffective assistance of counsel because counsel: (1) failed to investigate and prepare for trial; (2) failed to reasonably and competently advocate his defense at trial and (3) failed to seek a new trial when exculpatory evidence was discovered.

## Evidence at Trial

In its opinion, the intermediate appellate court described the evidence introduced at trial as follows:

> Several officers from the Liberty County Sheriff's Office went to a hotel during daylight hours to serve an arrest warrant on Crumpton. One plainclothes officer sat in an unmarked observation vehicle. The other deputies were in marked squad cars and were wearing jackets with the word "Sheriff" marked conspicuously down their sleeves. Sergeant Knox was in a marked patrol car on the street west of the hotel. Two Liberty police officers were in a marked squad car and wore either a uniform or a jacket with the word "[p]olice" emblazoned on it. The officers waited until Crumpton arrived in a vehicle and drove underneath the hotel carport. Captain Fairchild drove up behind Crumpton and activated the red and blue lights on his patrol car. The Liberty police officers got out of their vehicle and yelled "[p]olice" as they approached Crumpton with their guns drawn. Fairchild exited his vehicle and was yelling "[s]top" and "[p]olice." As they approached, Crumpton sped off in his vehicle. Crumpton passed two feet away from Fairchild, and Crumpton looked at Fairchild as Crumpton drove by. Crumpton drove eastbound down Highway 90 through Dayton with Fairchild in pursuit in one vehicle and Knox in pursuit in another vehicle. Both patrol vehicles had their lights and sirens activated. Knox was immediately behind Crumpton as they drove down the highway. After sideswiping some vehicles and running through the red lights, Crumpton drove at a high rate of speed through a turn, ran off the road, and wrecked the vehicle. Knox was one of the officers who maintained pursuit until Crumpton was apprehended. Knox was trying to arrest or detain Crumpton.
>
> Knox testified he pursued Crumpton at speeds as high as ninety miles per hour. His emergency lights and siren were

2

on during the pursuit. Knox testified that he was trying to lawfully arrest or detain Crumpton and that Crumpton fled from him.

Crumpton testified he thought he was being pursued by members of the Banditos motorcycle gang and that he thought that [the gang] was trying to kidnap or kill him in retaliation for burning a truck. He claimed the officers did not have their emergency lights on. He testified that he looked back and saw police officers and lights twenty yards before he wrecked the vehicle and ran from the police. Crumpton admitted he ran because he was afraid of being arrested. Crumpton knew he had a warrant out on him at the time.

## Standard of Review

Consideration of a habeas petition filed in federal court is limited to the highly deferential review standard afford to state court adjudications under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. *See Hearn v. Thaler*, 669 F.3d 265, 271 (5th Cir. 2012) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks and citation omitted)). Under AEDPA, a federal court may not grant habeas relief on a claim that was adjudicated on the merits by a state court unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers to holdings of the Supreme Court at the time of the state court's decision. *See Williams v. Taylor*,

529 U.S. 362, 412 (2000). Factual findings by the state court "are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence." *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005).

A state court decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rules but applies it unreasonably to the facts of a particular prisoner's case." *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407-08). In evaluating whether a state court's application of a rule was unreasonable, the specificity of the rule must be considered. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *See Williams*, 529 U.S. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme court has noted that this standard is difficult to meet ... because it was meant to be." *Id*.

## Analysis

*Legal Standard for Claim of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688). Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test. *See Strickland*, 466 U.S. at 687-97.

*Application*

A. <u>Failure to Investigate and Prepare for Trial</u>

Petitioner states that on the date in question, he received a phone call from a woman he knew only as Ashley. She asked him to meet her at a hotel.

When petitioner arrived at the hotel, he pulled up to Ashley, who was standing in a covered drive area. She opened the passenger side door of petitioner's truck and told him she had to get her

5

bag. She then ran into the hotel lobby. Petitioner then looked in his rear view mirror and saw two individuals in plain clothing advancing on foot in a "sneaking like posture" with handguns in hand. Petitioner then saw a white pickup truck pull out about 30 yard in front of his vehicle, blocking the exit from the covered drive area.

Petitioner believed he was being "set up" by Ashley so that individuals he had had an altercation with two weeks previously could harm him. Petitioner accelerated his vehicle over a curb and headed east on Highway 90. He states he only looked back once and saw the white pickup truck and what appeared to be a Lincoln Town Car chasing him.

Petitioner subsequently came upon traffic stopped for a red light. Petitioner, in fear of the people who were chasing him, went off the side of the paved street and sideswiped a telephone pole. This pushed his vehicle back into the street, where he sideswiped the passenger side of two vehicles stopped at the light.

After making a right turn at the traffic light, petitioner looked over his shoulder and discovered police were involved in the chase. After seeing the flashing red lights of a police vehicle, petitioner slammed on his brakes, causing his truck to slide into a ditch.

Petitioner states his defense at trial was that he was under the mistaken belief that he was being pursued by members of a motor cycle gang rather than the police. He asserts his attorney failed to adequately investigate his case and prepare for trial. He states

he told counsel Ashley, who was being used by the police to lure petitioner to the hotel, could provide testimony in support of his contention that he was being "set up." He states counsel told him he was unable to locate Ashley and made no attempt to subpoena her. Nor did counsel attempt to have the court direct the prosecution to produce Ashley at trial.

In connection with petitioner's state application for writ of habeas corpus, counsel supplied an affidavit concerning his representation of petitioner. Counsel stated that the police report on the incident contained no identifying information concerning Ashley and that petitioner supplied no information as to where she could be found. He also stated he unsuccessfully attempted to locate Ashley prior to trial.

In connection with petitioner's state application for writ of habeas corpus, the trial court made the following Findings of Fact and Conclusions of Law regarding this ground for review:

> Trial counsel adequately investigated and prepared for trial.
>
> Trial counsel attempted, unsuccessfully, to find idenitifying and locating information relating to the potential witness Applicant refers to as "Ashley" as reflected in trial counsel's affidavit. Furthermore, trial counsel informed Applicant long before trial on the merits that "Ashley" could not be located.
>
> Trial counsel's pretrial investigation and preparation did not uncover any information that would have assisted trial counsel in locating "Ashley." Before trial, trial counsel was allowed to view the offense report, which did not contain any identifying or locating information relating to Ashley.
>
> Trial counsel provided effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Applicant has not proven by a preponderance of the evidence that his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms. Applicant has not proven by a preponderance of the evidence that there is a reasonable probability that, but for trial counsel's deficiency, the outcome fo the trial would have been different.

Based on the record before it, it cannot be concluded that the state court's factual findings were an unreasonable determination of the facts. Nor can it be concluded that the state court's conclusion of law was contrary to or involved an unreasonable application of clearly established federal law. Even though counsel was unsuccessful in his attempts to locate Ashley, counsel's efforts on this point did not fall below an objective standard of reasonableness.[1] Further, there is no evidence in the record demonstrating the police or the prosecution would have been able to locate Ashley if ordered to do so by the trial court.

B. Failure to Reasonably and Competently Advocate

In addition, petitioner asserts counsel failed to properly cross-examine witnesses called by the prosecution regarding Ashley or introduce evidence demonstrating Ashley was being used by the police. He states this failure permitted the jury to draw the inference that Ashley did not exist.

---

[1] In addition, complaints regarding uncalled witnesses are not favored in federal habeas review. *Bray v. Quarterman*, 265 F. App'x 296 (5th Cir. 2008). In order to prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id*. (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). Petitioner has not provided Ashley's full name or demonstrated she would have been available to testify at trial. In addition, petitioner does not describe what testimony Ashley would have provided to bolster his defense that he believed he was being chased by members of a motorcycle gang.

8

The trial court made the following Findings of Fact and Conclusions of Law regarding this claim:

> Trial counsel's adequate pretrial investigation and preparation did not provide him with a means to identify or locate "Ashley."
>
> Applicant did not provide trial counsel with a way to identify or locate "Ashley."
>
> Without a means to identify and locate "Ashley," trial counsel could not learn, ahead of time, the substance of "Ashley's" expected testimony before calling her as a witness for the defense.
>
> Applicant did not provide trial counsel with any means of learning the substance of "Ashley's" expected testimony.
>
> Applicant has failed to demonstrate that the trial jury inferred that the material witness, "Ashley," did not exist.
>
> The record contains no indication or showing, through juror affidavit or otherwise, that the trial jury inferred that a material witness for the defense did not exist.
>
> Trial counsel provided effective assistance of counsel pursuant to the standards outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Applicant has not proven by a preponderance of the evidence that his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms. Applicant has not proven by a preponderance of the evidence that there is a reasonable probability that, but for trial counsel's deficiency, the outcome of the trial would have been different.

As stated above, petitioner's counsel did make unsuccessful attempts to locate Ashley. Nor is it clear what other evidence counsel could have introduced to demonstrate she was being used by the police or was at the scene of the incident. While he could have questioned prosecution witnesses about her, counsel would have understandably been reluctant to do so without knowing what they would say. Finally, it appears the jury found petitioner's

9

testimony that he did not realize it was the police that were chasing him to be less than credible. It is not clear that Ashley's testimony would have helped petitioner convince the jury he was being chased by a motorcycle gang. Even if it is assumed testimony from Ashley would have provided some support for petitioner's theory of the case, there is not a reasonable probability the result of the proceeding would have been different if the jury had been presented with evidence, other than petitioner's testimony, demonstrating Ashley was present at the scene of the incident and was being used by the police. Accordingly, petitioner did not suffer prejudice because such evidence was not presented.

Based on the foregoing, the state court's findings of fact with respect to this ground for review was not an unreasonable determination of the facts in light of the evidence before it. In addition, the court's legal conclusion on this point was not contrary to and did not involve an unreasonable application of clearly established federal law.

C. <u>Failure to Seek New Trial</u>

Finally, petitioner asserts counsel was ineffective for failing to seek a new trial. He states that during the punishment phase of the proceeding, a photograph was introduced which showed on-board camera equipment mounted on the dash of one of the vehicles involved in the chase. He states that during a bench conference, it was revealed that all new patrol units had camera equipment and that such equipment would have been operational on

the date in question. He states counsel should have sought a new trial based on the prosecution's failure to disclose exculpatory evidence in the form of a video made of the chase. He states that while counsel told him he intended to file such a motion, a motion was not filed.

In the affidavit he supplied in connection with petitioner's state application for writ of habeas corpus, counsel stated he was unable to determine what patrol unit was involved in the incident. In addition, he stated Elaine Taylor checked through all of the DVDs at the Liberty Police Department, but could not locate a recording that showed the chase. Ms. Taylor provided an affidavit stating she had no knowledge of any recording of the incident. Captain Steven Greene of the Liberty County Sheriff's Department also supplied an affidavit. He stated he had received a subpoena duces tecum directing him to provide any documentation regarding or an actual copy of any recording of the chase. He stated he was unable to locate any recording and stated he found a notation in department records that there was no recording of the chase.

With respect to this ground for review, the trial court made the following findings of fact and conclusions of law:

> No video recording of Applicant's encounter with and sub-
> sequent flight from law enforcement officers exists.
>
> The testimony of the State's witnesses at trial reflects
> that no in-car video camera recording of Applicant's initial
> encounter and subsequent flight from law enforcement of-
> ficers exists.
>
> Affidavits filed in response to Applicant's post-trial
> subpoenas provide no indication that an in-care video
> camera recording of Applicant's encounter with and flight

11

> from law enforcement officers exists.
>
> Even if trial counsel would have filed a motion for new trial, the affidavits [previously referenced] give no indication that a video recording exists. As such, there would have been no newly discovered evidence as a ground for granting a new trial.
>
> Applicant provides no proof that the existence of a video would have changed the outcome of the trial.
>
> Trial counsel provided effective assistance of counsel pursuant to the standards outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Applicant has not proven by preponderance of the evidence that his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms. Applicant has not proven by preponderance of the evidence that there is a reasonable probability that, but for trial counsel's deficiency, the outcome of the trial would have been different.

There is no evidence in the record demonstrating that a recording was made of the pursuit of petitioner by the police. While counsel attempted to locate a recording, he was unsuccessful. However, the fact that he was unsuccessful does not mean that his efforts to locate the recording fell below an objective standard of reasonableness. In addition, as no copy of the recording can be located, any assertion that the recording would have been exculpatory is speculative.

Without a copy of the recording, there is not a reasonable probability that a motion for new trial would have been granted. Petitioner therefore suffered no prejudice as a result of such a motion not being filed. The state court's determination of the facts with respect to this ground for review-specifically, that no recording exists--was not an unreasonable determination of the facts before it. Further, the court's legal conclusion on this

12

point was not contrary to and did not involve an unreasonable application of clearly established federal law.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit and will be denied. An appropriate final judgment shall be entered.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal from a judgment denying federal habeas relief may not proceed unless a certificate of appealability is issued. *See* 28 U.S.C. § 2253. The standard for a certificate of appealability requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Elizalde v. Dretke*, 362 F.3d 323 (5th Cir. 2004). To make a substantial showing, the petitioner need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues raised are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. Any doubts regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner. *See Miller v. Johnson*, 200 F.3d 272 (5th Cir. 2000).

In this case, petitioner has not shown that any of the issues he raised are subject to debate among jurists of reason. The factual and legal issues asserted by petitioner are not novel and

13

have been consistently resolved adversely to his position. In addition, the issues raised are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue in this matter.

    **SIGNED** this the **17** day of **September, 2014.**

_____
Thad Heartfield
United States District Judge